Matthias, J.
The demurrer of the plaintiff and certain of the defendants herein to the answer and cross-petition of Arminta Fred-line presents questions of law arising out of a certain deed, executed in 1875, by Edward Heath. The determination of the demurrer involves the construction of the terms of this deed, and, in order that it may be the more readily understood, we shall restate the pertinent facts averred in the cross-petition, together with those stated in the petition which are admitted by the cross-petitioner.
In 1875, when the deed in question ivas executed, Edward Heath was the father of six children — Maria Shilts, Henry Heath, John Heath, Hannah Hurless, Elizabeth Hawk and Nancy Daniels. The last named daughter, Nancy Daniels, was then the mother of three children — James Daniels, Susie Daniels and Arminta Daniels (now Fredline), this cross-petitioner.
Said Edward Heath in the deed referred to conveyed the land described in the petition and which the plaintiff seeks to have partitioned. The consideration named is $3,100, “to him paid by Nancy Daniels”; the granting clause is “do hereby grant, bargain, sell and convey to .the said Nancy Daniels, to her and her children, and assigns forever.” The habendum *23 clause, “to have and to hold said premises, with all the privileges and appurtenances thereto belonging, to the said Nancy Daniels, to her and her children and assigns forever”; covenants, “and the said Edward Heath, for himself and his heirs, does hereby covenant with the said Nancy Daniels, to her and her children and assigns that he is lawfully seized of the premises aforesaid; that the said premises are free and clear from all incumbrances whatsoever, and that he will forever warrant and defend the same, with, the appurtenances, unto the said Nancy Daniels, to her and her children, heirs and assigns, against the lawful claims of all persons whomsoever.”
Edward Heath died in 1877. Subsequent thereto Nancy Daniels intermarried with George Peters, known herein as George Peters, Sr., and that to such marriage was born three children — Bertha Chivington, Luda F. French, and the ward of plaintiff herein, George Peters, Jr. In 1899, Nancy Daniels Peters deeded her interest in said lands to her husband, George Peters, Sr., and in the year 1895 she died. The other persons •named are the children of George Peters, Sr., by a former marriage, except defendant Chilcote, she being a grandchild of Peters, her mother being a daughter of said Peters by such former marriage.
The cross-petitioner has purchased -the undivided four-sixths of said land, being the respective interests of four of the children of her grandfather, Edward Heath. She claims no interest by descent. It is the contention of the cross-petitioner, Arminta Fredline, that, under the deed from Edward Heath, Nancy Daniels took but a life estate; hence that her deed to Peters conveyed but an estate during her life, and that upon her death' said estate reverted, and Edward Heath being dead, the fee simple descended to his heirs, the six children horetofore named. The deed by Nancy Peters to, her husband, being made after the death of her father, conveyed to her husband, in addition to her life estate, her one-sixth of the fee. Arminta Fredline therefore claims to own four-sixths; she avers that the heirs of Elizabeth ITawk (who they are or where they live she knows not) own one-sixth, and the children and grandchild of George Peters, named, own the remaining one-sixth. .
*24 The question we are called upon to determine is: AVhat estate did the Heath deed convey: a fee simple to Nancy Daniels, a life estate to her with remainder to her children, a fee simple to her and her children jointly,, or did it convey only a life estate to Nancy Daniels, and upon her death the fee revert to Heath’s heirs'?
The cross-petitioner takes the position that such deed conveyed nothing but a life estate to Nancy Daniels, for the reason that the word "heirs” is not used in the conveyance in question. Upon the threshold of our consideration of this question, we are met by the rule that the use of the word "heirs” is essential to the conveyance of an estate in fee simple. This rule, though arbitrary, seems imperative unless changed by statute, and no synonym for "heirs” will take its place. (Washburn, Section 147.)
Such rule of the common law is still in force in this state, it not having been abrogated here as it has been in most of the states, or rather its modification in this state by statute extends only to wills. It is unnecessary to cite any of the many cases which have been collected by the text-writers, which hold that, in the absence of a repealing- statute, «such rule of the common law is imperative and must be followed. Any modification to be found in this state must be in decisions of our courts.
In the case of Ford v. Johnson, 41 O. S., 366, it is held the word "heirs” is indispensable to the creation by deed of an estate tail or fee simple; that, though the requirement be technical, it has always been a-rule of property in this state, and for manifest reasons must be upheld. This case was followed by the Hamilton Circuit Court in Stephenson et al v. Sedan et at, 12 C. C., 408, where they say they are bound to hold that the rule of the common law is the law of Ohio, and, if further change or relaxation of its strictness is to be made, it should be done by the Legislature, or the true state of ,the law announced by the highest court of the state.
If then the use of the word "heirs” be necessary to create a fee, we must determine whether it be sufficient for the purpose to use the technical term in any but the granting or *25 habendum clauses, for admittedly such word is not employed therein.
If it be insufficient for such purpose, and of no more effect than if not used in the deed at all, then the deed conveys neither a fee simple nor fee tail, for the word ‘heirs” is as essential to create an estate tail as it is to create a fee simple. In general no other word can take its place. A grant to a woman and her children creates an estate for life only in the first taker, as the proper word of inheritance is wanting. (Jones, Section 614; Washburn, Sections 191, 199.)
Neither has the rule in Shelly’s case, which is still the rule of law in Ohio, as to deeds, any application when the word “heirs” is not used. The word “children” is not a word of limitation, but a word of purchase. It follows then that, unless the Avord “heirs” in the Avarranty clause can be considered ' in the construction of the deed in question, no estate in fee or in tail passed, but only an estate to Nancy Daniels during her life, and nothing whatever to her children.
Our question then, is: the granting being to Nancy Daniels, to her and her children, habendum clause in the same language, Avhether Ave are permitted to consider the language of the Avarranty.
' We find the courts of other states at considerable variance upon this question, but Ave observe that the later the decision, the more liberal in the alloA\rance of the use .of all parts of a deed for the purpose of gathering the intention of the grantor. In doing this, hoAvever, it must bo kept in mind that, “Security of titles requires that no mere arbitrary discretion should be exercised in conjecturing Avhat words the grantor would have used had he been truly advised as to the legal effect of the Avords employed.”
In 13 Cyc., 620, we find this proposition:
“The covenants can not control the premises, although they may be important and sometimes decisive, and may appropriately be considered by the court, Avhen a question arises as to Avhat is granted, for the purpose of aiding the construction to be given to the instrument.”
Returning to the ease of Ford v. Johnson, supra:
*26 In the deed under consideration there the granting clause, habendum and ■ covenants were all with the said Charles Cline and his lawful issue, and, as the court there says, “the estate is not by the words of grant, or by anything within the four corners, limited to Cline and his heirs, nor to his issue and their heirs.’.’
In that deed it is seen that the grantor consistently throughout the deed omitted the necessary word of limitation; but it does appear that the court sought “the obvious intent and plan of the instrument.”
We are unable to find the decision of any court in Ohio which does not favor the inspection and consideration of the whole instrument in construing it. The rule was stated in the early case of White v. Sayre, 2 Ohio, 114, that—
“Every deed is to be construed as, if possible, to give effect to the intention of the parties. It is to be construed most strongly against the grantor. If the intention of the parties, apparent on the face of the instrument, can not be carried into effect, this object should be attained as far as possible.” See, also, Washburn, Section 2312; 9 C. C., 96.
Thus we find in the case of Bobo et al v. Wolf, 18 O. S., 463, the court considered the entire instrument to determine the property granted, and the extent to which it could be used and enjoyed. See, also, 44 O. S., 269.
It is to be observed, too, that in the case of Stephenson et al v. Sedam et al, 12 C. C., 408, relied upon by the cross-petitioner, the word “heirs” was not used in any part of the deed. The court sought it even in the warranty clause, for they say “neither in the granting clause, in the habendum clause, nor in the covenants, is the word ‘heirs’ used in connection with the grantees. ’ ’
In the case of Martin, Administrator, v. Jones et al, 62 O. S., 519, the court uses this language:
“The intention of the parties to a deed should be gathered, if possible, from the whole instrument; and no part of the deed should be rejected as repugnant to the granting clause unless the repugnancy is irreconcilable.”
*27 In that case the habendum and granting clauses were reconciled by the court.
In the case of Brown v. Bank, 44 O. S., 269, the court went so far as to make an exception, in the case of a mortgage, to the rule requiring use of word “heirs,” and the circuit court in 12 C. C., 408, supra, regarded such decision, announced by Judge Owens, as a modification of the rigorous rule of the common law. While the reasons there given do not apply to the case at bar, it is in harmony with all decisions of the courts of this state in favoring an inspection and consideration of all parts of a deed in construing it, and in that respect we regard that case (44 O. S.) as having a commanding, if not controlling effect in our determination of the question before us.
Let us then turn again to the deed before us and note a few observations; the consideration recited to have been paid is worthy of some attention ($3,100). That shows that the title came by purchase and not by deed of gift (65 O. S., 442). The granting clause is to Nancy Daniels, to her and her children; there are no words specifically limiting the interest of Nancy Daniels to a life estate. We think the question here pertinent: If only life estate to Nancy Daniels granted, how could covenant of warranty avail the children anything? If we are to be permitted to apply the word “heirs” as we find it, then is it not a plausible if not necessary construction of this deed that ,t conveys the land in question to Nancy Daniels and her children, heirs and assigns forever, the word “heirs” referring to Nancy Daniels as well as her children? Why, then, do not Nancy Daniels and her children take an estate in common? Ts it any different than if it were to Nancy Daniels, and James Daniels, Susie Daniels and Arminta Daniels, their heirs and assigns forever? For that is certain which can be made certain.' It we are justified in the use of the word “heirs” as we have applied it, then the estate granted was an estate in fee simple, in common to Nancy Daniels and her children then living. Devlin on Deeds, Section 860; Jones, Section 580-617; Wash-burn, 2266, Section 2115; Brewster, Sections 38, 39, 47; .12 C. C., 754; 92 N. C.; 623.
Sallzgaber, Hoke & Osborn and Dcdley & Allen, for demurrer.
E. G. Dempster and Ira Longsworth, contra.
' We have considered quite carefully the cases cited by counsel for the cross-petitioner, which hold, that the deed can be looked to in no part beyond the granting and habendum clauses to aid in determining the estate conveyed, but we believe such decisions and especially that of 15 Ark., 222, upon which counsel rely, to be out of harmony with the tendency of the decisions of our courts. While,, in the absence of statutory provision, we can not ignore -the rule of the common law, yet we believe every opportunity should be embraced in the construction of deeds to mellow and modify its severity. In construing the deed here in question so that Nancy Daniels and her three children, living at the time of the conveyance, became tenants in common, we not only express our own convictions in the matter, but regard such interpretation to be so in line with the tendency of our highest court that, were this question squarely before it, a similar conclusion would be announced.
The demurrer is sustained.